UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


ASHLEY PAINSON, et al.,        *    Case No. 14-CV-02788(ENV)
                               *
            Plaintiff,         *    Brooklyn, New York
                               *    February 9, 2016
     v.                        *
                               *
THE CITY OF NEW YORK, et al., *
                               *
            Defendants.        *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *

         TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
            BEFORE THE HONORABLE MARILYN D. GO
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          UGOCHUKWU UZOH, ESQ.
                             Ugo Uzoh, P.C.
                             304 Livingston Street
                             Suite 2R
                             Brooklyn, NY  11217


For the Defendants:          GARY MOY, ESQ.
                             New York City Law Department
                             100 Church Street
                             Room 3-137
                             New York, NY  10007






Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 4:05 p.m.)

2              THE COURT:  Painson vs. City of New York, docket no.

3    2014-CV-2788.  Will counsel appearing by telephone for this

4    motion hearing please state their names for the record.

5              For the plaintiffs.

6              MR. UZOH:  Good afternoon, Your Honor.  Ugo Uzoh for

7    the plaintiff.

8              THE COURT:  And the defendants.

9              MR. MOY:  Gary Moy from the Office of the

10   Corporation Counsel.

11           THE COURT:  Good afternoon, both.

12           I have a couple questions about the claims against

13   the individual -- the new individual defendants.

14           You really don't have any specific allegations

15   concerning them.  And I'm just wondering if you at least have

16   some information as to where they were or when they arrived.

17           I assumed that the original named defendants, or the

18   defendants who were named after the first round of amendments,

19   were ones who arrived in the first squad car, or, you know,

20   whatever.  Or who were there on the scene from the earlier

21   incident not involving the plaintiff.

22           MR. UZOH:  Your Honor, there were three officers

23   with who were originally involved in the incident.  That would

24   be Mansour-- Officer Mansour, Gaudin, and Officer Moore.

25           It's not clear when all the other officers arrived

1    on the scene, but at some point the other named officers,

2    including the two additional officers that we're trying to add

3    to the -- we're seeking to add to the complaint, that would be

4    Officer Lieutenant Zang (phonetic) I believe.  At some point

5    all those other officers arrived at the scene.

6            But the initial three officers who were involved in

7    the incident who physically initiated the contact or the

8    incident with the -- were Officer Moore, Mansour, and Gaudin.

9            MR. MOY:  I guess one is I would dispute the least

10   part of that characterization, though it is kind of hard,

11   given that the plaintiff's counsel statement is made in vague

12   terms and there were many incidents in this alleged incident.

13           So yes, at some point certain officers were there,

14   but I dispute that the officers, because they were there for a

15   portion or one of the events, was there for the entirety of

16   the incident.

17           THE COURT:  Well I think, you know, the case has

18   shrunk a little bit with this proposed amended complaint with

19   the settlement of the claims as to the other plaintiffs that

20   were originally -- or the other plaintiffs originally in the

21   action.

22           MR. MOY:  Well, it only stuck because we, I mean --

23           THE COURT:  Well, let -- Mr. Moy.

24           MR. MOY:  Because we settled part of it and --

25           THE COURT:  I'm not going to argue over how many

1    incidents.

2         The point is, and you can call it separate

3    incidents, I'm just trying to get some facts and I don't

4    understand why after -- I assume you deposed all these

5    officers pursuant to the summons?

6         MR. MOY:  Yes, we have, Your Honor.

7         THE COURT:  You weren't able to find out from them

8    when they arrived, Mr. Uzoh?

9         MR. UZOH:  You know, we did.  The only ones that --

10   well, the three initial officers were the ones who were clear

11   as to the time when they arrived.

12        All the rest of the officers named in the complaint,

13   they weren't really all that clear.  But several of them said

14   that they received a call seeking officer assistance and they

15   ran to the scene, but they were not very clear as to the time

16   they were there.

17        And there's still several of them who were not

18   really that clear as to the extent of their involvement, in

19   the whole incident as well.

20        And that's why the complaint is -- I'm not -- well,

21   we have deposed the officers and, obviously, we have the

22   transcripts of those depositions.  Have not very -- because we

23   are not really alleging anything new in the complaint so I'm

24   not sure the extent that the Court wants us to be -- the

25   complaint to be as detailed to include facts in the complaint

5

1     that would satisfy the Court as to, you know, the details of

2     the incident.

3              At this point in time the only thing we're really

4     trying to add to the complaint were the two additional

5     officers --

6              THE COURT:  Well, you know --

7              MR. UZOH:  -- the time when they arrived.

8              THE COURT:  Mr. Uzoh, you have different species

9     complaints.  You have a false arrest.  You have excessive

10    force.  You have failure to intervene, and then you have some

11    of your, you know, your *Monell* claim and then you have some of

12    the new claims.  Right?

13             MR. UZOH:  Those claims were already in the

14    complaint.

15             THE COURT:  No, no.

16             MR. UZOH:  Telling you --

17             THE COURT:  Stop, stop.  I'm not -- and the new

18    claims.  That's why I named these claims first.  Okay?

19             The point I'm making is, people involved in the

20    actual arrest may be -- may not be the same people who use

21    excessive force.  Your client is not even able to name the

22    persons involved that they think might have inflicted

23    excessive force.

24             MR. MOY:  I can do it for plaintiff, Your Honor, and

25    that's Officer Jared Delaney and that's it.

1      MR. UZOH:  There were not, Your Honor.  The officers

2  themselves were not that clear as to the extent of their

3  involvement.

4      MR. MOY:  I dispute that.

5      MR. UZOH:  If you actually go to the -- because we

6  separated out the claim.  If you actually go on the excessive

7  force claim, we tried to identify officers which we believe

8  had some level of involvement in the use of force claim.

9      We did the same for false arrest if you go --

10  because we separated out claim by claim.  Under each claim we

11  identified officers which did on the depositions that I think

12  completed, we actually believe had some involvement, some kind

13  of involvement in each of those claims.

14      THE COURT:  Now, how do you determine who may

15  possibly be involved in the false arrest claim?  You've got

16  people who did the paperwork and people who authorized the

17  arrest, and people who actually took the plaintiff into

18  custody.  You came --

19      MR. UZOH:  Based on deposition testimony of the

20  officers who claim to be involved in making the arrest and I

21  believe the sergeant who actually validated, who approved the

22  arrest.

23      THE COURT:  Okay.  But --

24      MR. MOY:  Your Honor, plaintiff alleges some terms.

25  I'm looking at the first cause of action.  It says false

7

1    arrest against defendant officers.  He didn't specify.  The

2    testimony is very clear.

3          THE COURT:  Mr. Moy, I'm not requiring a plaintiff

4    to believe everything a defendant officer says in a

5    deposition.  And you would not want to accept everything that

6    a plaintiff says in a deposition, so --

7          MR. MOY:  Sure, Your Honor, but she needs to have --

8          THE COURT:  Stop.  Stop.

9          MR. MOY:  -- a good faith basis about naming the

10   officers and we know who undisputedly, these officers are.

11         MR. UZOH:  Your Honor, the --

12         THE COURT:  No, not -- wait.

13         MR. UZOH:  -- false arrest claim also involves a

14   failure to intervene.  The --

15         THE COURT:  Well, no, no, but you have a failure to

16   intervene claim.  I'm not challenging you for that.  And you

17   say all of the defendants failed to intervene.

18         Now, I would think for the false arrest and the

19   excessive force, that those would have been the officers who

20   might have been identified earlier, and not these two new

21   officers who you think might have been around on the scene.

22         That's all I'm trying to do is to get you to focus

23   on trying to narrow the claims to the persons responsible.

24   And I can accept that you can't identify all of them, but you

25   know, don't conflate failure to intervene with false arrest.

8

1    They're different.

2         MR. UZOH:  Your Honor, at a time when -- well,

3    during -- at the deposition the officers who testified were

4    not clear as to the extent of involvement.

5         All I got from them regarding the two new officers

6    were that they were there.  And I inquired what did they do?

7    I didn't really get any clear response to that.

8         MR. MOY:  I dispute that, Your Honor.  We can

9    produce all the deposition transcripts for your review.

10        THE COURT:  No, I'm not deciding a summary judgment

11   motion.

12        Mr. Uzoh, I'm just cautioning you now about the need

13   to properly identify the officers and don't conflate failure

14   to intervene with the actual claim of false arrest or

15   excessive force.  That's all I'm telling you.  Okay?  I'm not

16   --

17        MR. UZOH:  You -- Your Honor --

18        THE COURT:  Stop.  No.  You have to have a good

19   faith basis and if you have a good faith basis that some

20   people may have been there and may have been close enough to

21   the plaintiff to have taken them into custody or to have

22   inflicted excessive force -- and I suspect there, you know,

23   they may be the same people plus the authorizing officer for

24   the arrest, you know -- I can live with that.

25        And then you have your failure to intervene, which

1    covers both, you know, their failure to act on the arrest and

2    the failure to act with respect to the excessive force.

3         So just avoid unnecessary motion practice later by

4    trying to refine what you're proposing now, now that you've

5    had the benefit of the discovery and just go over what you

6    have.  And perhaps Mr. Moy will give you some ideas too, but

7    I'm not requiring you to accept everything Mr. Moy says.

8         So let's just --

9         MR. MOY:  Well, it's not about what I'm saying, Your

10   Honor.

11        THE COURT:  Stop, stop, stop, stop, stop, stop,

12   stop, stop.  Let's just get to the motion.  Okay?

13        MR. UZOH:  Your Honor, if I may?  If I may?  The

14   excessive force it actually -- there were three officers I

15   clearly identified based on the deposition.

16        THE COURT:  You didn't clear --

17        MR. UZOH:  That they have an involvement and I --

18        THE COURT:  Yeah, you clearly -- right.  Okay.  You

19   clearly ruled out officers.

20        MR. UZOH:  Right. The idea -- the claim that I

21   didn't have any proofs made by the defendants is not accurate.

22        When you look at the deposition transcripts I did

23   actually ask defense counsel several times to produce, sworn

24   testimony, a sworn affidavit from the two new officers, on

25   several occasions, that they have nothing to do, that they did

1    not have any involvement or to discredit the extent of their

2    involvement.  And that did not -- we did not get that.

3           So based on the deposition of the officers, a lot of

4    the officers even today, we don't know who actually handcuffed

5    these plaintiffs.

6           MR. MOY:  No one knows, Your Honor.  It was a mess

7    of a cluster.  But we do know the officers who had her arms.

8    We know who those officers were, Your Honor.

9           THE COURT:  Okay.  Well, anyway, let's stop.

10           MR. MOY:  Well, he does a lot of talking.  I haven't

11    had an opportunity to say anything, Your Honor.

12           THE COURT: Stop.  Stop.  Stop.  Okay.  I was really

13    trying to get Mr. Uzoh to see if we could narrow the claims

14    because I'm a little concerned about just throwing more names

15    out there that may or may not have anything to do with it.

16    But let's just get to the merits of the motion.

17           And I don't think it's a dispute as to what the

18    standards are for amendment that you know, Rule 15(a) says

19    leave to amend should be really given when justice so

20    requires.

21           But under the Second Circuit standards of course,

22    the courts look to various factors, including whether or not

23    amendment -- there's been undue delay, whether there's been --

24    and prejudice.  I think those are the really two main factors

25    that the courts look at in considering whether leave to amend.

1    But you know, there are -- there are many factors that courts

2    can consider in determining whether or not to grant leave to

3    amend.

4            And now, in this case --

5            MR. UZOH:  Your Honor, if I may suggest, with regard

6    to the two new defendants, if the defendants are willing to

7    produce just one testimony from them that they had no

8    involvement or describe clearly the extent of their

9    involvement.  I'm not trying to name the (indiscernible).

10   I've done that in my other cases.  I will obviously, because

11   it is the matter of the case.

12           Or we can also take the position that we can depose

13   them.  I've done that in some of my other cases as well.  And

14   find out their involvement.

15           The reason why, as I was trying to explain before

16   and I apologize for interrupting you.  The reason why the

17   complaint is the way it is, is because it's not so -- it's

18   still not very clear.  I'm still trying to figure out who

19   actually placed handcuffs on Ms. Painson.

20           Then still, officers are still not that clear.  And

21   Mr. Moy is right, there were two officers who considered that

22   -- or agreed that they placed Ms. Painson's arms behind her

23   back.  But other than that there are several other issues that

24   we still don't know, even after deposing the police officer.

25   So I'm willing if --

1          THE COURT:  What do you mean by that?  What do you

2     mean by that, there are other issues you don't know?  What is

3     it?

4          MR. UZOH:  Like how many officers who were at this

5     thing.  Ms. Painson is alleging that she was strip searched

6     even though Mr. Moy keeps saying that that is not true, but --

7          MR. MOY:  That is false.

8          MR. UZOH:  -- we don't know which officer strip

9     searched her.

10         MR. MOY:  Because none did.

11         MR. UZOH:  Mr. Officer Mansour testified that he and

12    another officer were involved in arresting Mr. Mercado.  But

13    we don't know who that officer is today.  Officer Mansour did

14    identify Officer Ortiz.

15         However, Officer Ortiz himself testified that he was

16    not involved.  And, you know, so there are still issues out

17    there that even after our depositions I believe so far the

18    plaintiffs are probably thinking about ten depositions or so,

19    which they're not clear as to some issues relating to the

20    case.

21         MR. MOY:  No, no, what the plaintiff proposes,

22    however, will resolve that.

23         I've already said in the letter what that -- Officer

24    Zang for example, doesn't know anything about those arrests.

25    He only remembers participating in the first incident that I

1     outlined in my motion papers.

2            As for Officer Tinent (phonetic), he participated in

3     the arrest of Alexis Shields, whose claims are settled, and

4     who by the way, Your Honor, admitted under oath that she

5     interfered with Diego Mercado's arrest.  And also testified in

6     her IAB statements that she did interfere with Mr. Mercado's

7     arrest.  So he should not be a defendant in this action, Your

8     Honor.  That was the extent of his participations outlined in

9     my letter.

10           THE COURT:  All right.  Stop.  Stop.  Stop.

11           MR. MOY:  Insofar as he wants his testimony, he had

12    a -- he filed  -- he notified the Court as of November, 2015

13    about wanting to amend the complaint.  And discovery just

14    closed this last week, Your Honor.  He had a month and a half

15    to depose these officers.

16           I would have made them available.  He decided not to

17    depose them.  There is no reason to depose these two other

18    officers because there's no information other than what I

19    outlined in that letter.  And I'm making a statement as an

20    officer of the Court.

21           MR. UZOH:  Your Honor, before the letter we had

22    asked defendants to identify officers, even before we settled

23    Ms. Shields' claim.  The officers who were at the scene and

24    who were involved in the incident.

25           Mr. Moy did not identify Officer Tinent.

14

1        MR. MOY:  He was not known to me at that time.

2        MR. UZOH:  Officer Tinent's name came up during

3    deposition.  And like I said before, where after his name came

4    up I inquired, I asked Mr. Moy, I asked for just one statement

5    from Officer Tinent describing the extent of his involvement.

6    None of those came.

7            It's not the first time that I've been told that an

8    officer did not have any involvement in the case, and the

9    Court allowed me to depose the officer to find out actually

10   the extent of the officer's involvement.  This is coming from

11   Mr. Moy, inasmuch as I trust Mr. Moy and we took --

12       THE COURT:  You could have deposed him.

13       MR. UZOH:  Because I have to --

14       THE COURT:  Why didn't you depose him?

15           Anyway, let's -- I heard Mr. Moy saying Officer

16   Tinent was involved in the arrest of some of the people who

17   were arrested earlier?

18       MR. MOY:  Of Ms. Alexis Shields.

19       THE COURT:  Oh, with Shields.  Okay.

20       MR. MOY:  Who once again, testified under oath that

21   she interfered with her father's arrest, Diego Mercado.

22       THE COURT:  Wait.  Stop.  Stop.  Stop.  I got that

23   point already.  I read it.  All right.  Enough.

24           So when did Shields get arrested as opposed to

25   Mercado and Painson?

1          MR. MOY:  All around the same time, Your Honor.

2          THE COURT:  Okay.  So he could have been present.

3     He was likely to have been present when Painson was arrested

4     and when there was contact with Painson, right?

5          MR. MOY:  Well, no, he didn't have contact with

6     Painson because he was involved --

7          THE COURT:  Stop.

8          MR. MOY:  -- with --

9          THE COURT:  Will you listen to my question?  So he

10    was --

11         MR. MOY:  I thought I was answering it, Your Honor.

12    My apologies.

13         THE COURT:  I said, so he was present when she was

14    arrested and there was physical contact between her and some

15    officers.  Right?

16         MR. MOY:  Yes.

17         MR. UZOH:  Exactly, Your Honor.

18         THE COURT:  Okay.  But was the testimony clear that

19    he was with Shields?

20         MR. MOY:  There --

21         MR. UZOH:  (Indiscernible.)

22         THE COURT:  Anyway, just you've got to go through

23    and sort this out that way.  And if, in fact, there's a

24    failure to intervene with respect to the excessive force, that

25    may be, you know -- his presence may be sufficient on the

1    failure to intervene.  I don't know.  And certainly that may

2    be the case with the other plaintiff, new plaintiff proposed.

3    You've got Tinent and, I'm sorry.

4              MR. UZOH:  Officer Zang.

5              THE COURT: Zang.

6              MR. UZOH:  The other officer is Zang, Your Honor.

7              THE COURT:  Zang.  And --

8              MR. MOY:  Your Honor --

9              THE COURT:  Wait.  Stop.  Stop.  Now -- oh, Chong,

10   actually.  It's not Zang.  It's Officer Chong.  So he was the

11   one who was involved in the arrest of some of the earlier

12   arrestees?

13             MR. MOY:  No, he was present -- he was present

14   during the arrest -- well, or the issuance of summons towards

15   the lone African/American male who was engaged in the verbal

16   altercation who then walked away from the crowd.

17             So he was actually I think a block away or so before

18   -- well, he wasn't even present during this incident involving

19   Ashley Painson and Diego Mercado, but he was present during

20   the earlier verbal altercation involving an unidentified male.

21             MR. UZOH:  Well, Your Honor, we don't know that.

22             MR. MOY:  Several officers were present there.

23             MR. UZOH:  We don't know that because either Mansour

24   or Ortiz testified that he was at the scene of the arrest

25   that --

17

1          MR. MOY:  That is not true.

2          THE COURT:  Well, let --

3          MR. MOY:  Plaintiff can produce the deposition

4     transcripts right now.  I'm willing and ready to --

5          THE COURT:  Stop.  Stop.

6          MR. MOY:  -- review it.

7          THE COURT:  I'm not -- look, I'm not going to decide

8     that right now.  Okay.  I don't want to hear you.  I would

9     have been happy to look at deposition transcript but nobody

10    cared to give it to me and I'm not going to hear you argue

11    over it.

12         MR. MOY:  Well, plaintiff's counsel is --

13         THE COURT:  Stop.  Stop.

14         MR. MOY:  It's plaintiff's counsel's burden.

15         THE COURT:  Stop.

16         MR. MOY:  It's his motion.

17         THE COURT:  This is not a summary judgement motion,

18    but there has to be a good faith basis.  And that's all I'm --

19         MR. MOY:  Which is why --

20         THE COURT:  Stop.

21         MR. MOY:  -- I'm --

22         THE COURT:  Will you stop interrupting me, Mr. Moy?

23         I recognize that the plaintiff has to have a good

24    faith basis.  So he needs to look at the deposition

25    transcripts to make sure he has a good faith basis.  And if

1    you can assist him, fine.

2          But obviously, you seem a little too caught up to be

3    able to be -- talked this passionately about what you have to

4    offer.  What information you have to offer.

5          Now let's just go to the motion.  As I said, Rule

6    15(a) specifies that leave to amend should be freely given

7    when justice so requires and courts generally have looked at

8    the two main factors, prejudice and delay, as well as bad

9    faith.  I'm not prepared to even address the issue of bad

10   faith and I don't think that that's the argument here.

11         There is an argument about undue delay, which I will

12   address first because as the defendants point out, the motion

13   to amend was filed more than one year after the original

14   deadline set for amendment.

15         Now the Court recognizes that there were efforts to

16   settle which did delay the conduct of this case, as well as a

17   delay in the depositions in this case due to the desire of the

18   parties to get medical records before depositions were

19   conducted.

20         That being said, however, when amendment is sought

21   long after a deadline set by the court, the Second Circuit has

22   consistently recognized that courts should balance the liberal

23   pleading standards of rule 15(a) against the good cause

24   standard of 16(b).

25         And generally, you know, absent establishment of

1    good cause as required by 16(b), courts have the discretion to

2    deny leave to amend after a deadline has been set for

3    amendment of the pleadings.

4            And you know, some of the cases where this is

5    discussed is *Cazner v. Second Avenue Delicatessen, Inc.* 492

6    F.3d at 245.  And *Parker v. Columbia Pictures Industries,* 204

7    F.3d at 339 and 40.

8            And with respect to the good cause standard in

9    16(b), courts have recognized in, you know, *Cazner, Parker,*

10   *and Vorchosky* (phonetic) that good cause depends on the

11   diligence of the moving party.

12           I just note that the Second Circuit commented in

13   *Cazner* that the amendment of the pleadings is one of the four

14   deadlines that a trial court must include in a 16(b)

15   scheduling order.

16           And as the advisory -- and noted that the advisory

17   committee said that this item, this deadline will assure that

18   at some point both the parties and the pleadings will be fixed

19   by setting the time within which joinder of parties shall be

20   completed and the pleadings amended.  And that's in the 1983

21   Advisory Committee notes.

22           Now, given what I've discussed about the procedural

23   posture of this case, I cannot find that the plaintiff can

24   demonstrate good cause for amendment with respect to the

25   amendments that -- to add a first amendment right of assembly

1    claim and a strip search claim.  Those claims existed within

2    the plaintiff's knowledge from the inception of the case.  And

3    there is just no basis for the delay.  There's just no way

4    that the plaintiff can justify a delay in coming forward with

5    a completely new claim and a new theory of liability.

6         And among the cases that the Second Circuit has

7    upheld the denial of leave to amend in *McCarthy v. Dunne and*

8    *Bradstreet Thorpe*, and 482 the Second Circuit discussed *Zara*

9    where amendment of a complaint -- a motion for a leave to

10   amend is filed two and a half years after commencement of an

11   action *Ansome* (ph) *Associates, Inc. V. Coca-Cola Petroleum*

12   *Limited*, where discovery had already been completed, and in

13   any event in the *McCarthy* case the court noted that the

14   plaintiffs became aware of the need to consider a possible

15   claim relating to the amendment seven months before moving to

16   amend their complaint.

17        The discovery of the First Amendment claim just

18   didn't -- there was no need to discover the right that the

19   plaintiffs may have a potential for submitting a claim.  And I

20   charg the plaintiff with knowledge of the strip-search.

21        So I don't find that the plaintiff had good cause to

22   seek leave to extend the time to amend the pleading for these

23   two claims.

24        And I also note that with respect to the First

25   Amendment claim I agree with the defendants that those claims

1    are futile.

2         The First Amendment protects the rights of people to

3    peaceably to assemble as the First Amendment to the

4    Constitution states.

5         And historically that right to peaceably assemble is

6    recognized as a right in order to petition the government at

7    District Court and *Satulis v. Township of Denville* (phonetic)

8    in New Jersey, so noted, it's not that the -- that First

9    Amendment right to assemble is not a generalized right

10   association, as the Supreme Court noted in *The City of Dallas*

11   *v. Denglin* (phonetic) and *Colton v. Connecticut*.

12        And specifically in *Colton* the Supreme Court noted

13   that an order to disperse was constitutional where the

14   plaintiff was not engaged in activity protected by the First

15   Amendment.

16        And socializing is not an activity protected by the

17   right to peacefully assemble as the District Court in *Pinafore*

18   *v. City of Chicago* recommended.

19        There was no expressive activity alleged with

20   respect to the complaint, so I find that denial of leave to

21   amend is appropriate also on grounds of futility.

22        With respect to the addition of Officers Tinent and

23   Chong, the calculus changes a little bit because some of the

24   information relating to these two officers, the information

25   did not come about until after the depositions of the various

1    defendant officers.

2            So I cannot find that plaintiff necessarily did not

3    proceed with diligence with respect to seeking to add these

4    two officers.

5            However, as is apparent from my questioning and

6    comments earlier, I do -- I am somewhat concerned about how

7    the proposed second amended complaint is drafted.

8            I am not, in this procedural posture, prepared not

9    to grant the -- not necessarily to deny the plaintiff leave to

10   amend to join those two officers, but I will not grant leave

11   based on the proposed amended complaint.

12           So I will grant leave to amend to add professor --

13   Officers Tinent and Chong, provided that there are allegations

14   that -- or at least a good faith basis on the part of

15   plaintiff's counsel that they engaged in some sort of conduct

16   under which they could be charged under the various claims.

17           I mean, they could very well be properly named under

18   the failure to intervene.  But they may not be properly named

19   as defendants under the excessive force claim.

20           I urge the plaintiff's counsel to review the

21   deposition transcripts and before filing a proposed amended

22   complaint.

23           And I caution the plaintiff's counsel that under

24   Rule 11 he has to have a good faith basis for filing any

25   complaint.

1           So it's, you know, it's plausible to believe that

2     some of these two newly named officers may be involved somehow

3     in either the arrest or the infliction of force or may have

4     been in a position to intervene.

5           But there is not enough in the complaint to so

6     suggest what they did, and I'm not satisfied with what Mr.

7     Uzoh has said, that he has done a careful enough review to

8     have a good faith basis for joining these two officers.

9           But, you know, based on what has been said and what

10    appears to be confusing testimony, I am not going to, at this

11    juncture, deny leave to amend.

12          So I'll ask Mr. Uzoh to file within two weeks,

13    another proposed amended complaint.

14          MR. UZOH:  Your Honor, I understand.  I understand

15    your reasoning for denying the two claims, and I also

16    understand your reasoning for requiring the plaintiffs to

17    submit a new proposed amended complaint.

18          With respect to the two new officers, like I said

19    initially, I'll be content, plaintiffs I'm sure will be

20    content if defendants will produce -- I've done this in

21    several other cases.

22          THE COURT:  Why didn't you do that in the first

23    place?  Why didn't you depose them in the first place before

24    seeking to join them?

25          MR. UZOH:  Well, at the time we feel we had -- the

1    deposition had not yet completed.

2            And like I said, I did actually on more than one

3    occasion, ask defense counselor if they would be willing to

4    produce a statement, one statement.  You know, so that was the

5    reason.

6            If I have a clear statement from them, one way or

7    the other, that they did not have any involvement -- and the

8    reason I am actually trying to include them is, like I said,

9    if they don't know who handcuffed Ms. Painson and there are

10   still some issues about the other individuals who participated

11   or the other officers who participated in the arrest, and

12   issues that I raised in the complaint --

13           THE COURT:  Mr. Uzoh, I'll ask the defendant to

14   cooperate but I'm not going to direct the defendant to do

15   that.  You had the option to depose them.

16           We're dealing with events that occurred almost --

17   more than two and a half years ago at this point.  Maybe they

18   will have a clear recollection of what happened.  Maybe Mr.

19   Moy might be able to come up with some sort of sworn statement

20   that might satisfy you.  But I suspect not.

21           Perhaps if Mr. Moy is willing to consent it might be

22   more fruitful just to have their depositions held sooner

23   rather than later before the amended complaint is filed, and I

24   make no judgment as to whether or not there will be a good

25   faith basis for joining either of these two officers.

1        My suspicions are that you're going to end up being

2   as dissatisfied with the answers of these two additional

3   officers as you were with the testimonies of the prior

4   officers.  Right?

5        MR. UZOH:  Well, without deposing them I'm not going

6   to know, Your Honor.  And without talking to them I will

7   not -- I'm not going to be able to know.

8        THE COURT:  No one stopped you from deposing them

9   before, Mr. Uzoh.

10       MR. UZOH:  That is correct, Your Honor, but like I

11  said, because we moved before the expiration of the deadline,

12  discovery deadline, you know, my intention was that we were

13  going to be able to add them as a party and depose them as a

14  party.  And --

15       THE COURT:  I'll let you at them, but I want you to

16  go back and look at the deposition testimonies that you had to

17  make sure you have a good faith basis for adding them now.

18  But I have to say --

19       MR. UZOH:  Your Honor, I do --

20       THE COURT:  Will you please just let me -- both of

21  you, and Mr. Moy is not guilty this time, just let me finish

22  more than one sentence before you interrupt?

23       MR. UZOH:  I apologize.

24       THE COURT:  Look, you have to have a good faith

25  basis for amendment.  I think that there is a plausible claim,

1    notwithstanding the mushy statements you've made all along.

2    But I'm not going to make any comment on what was said during

3    the depositions, and Mr. Moy may very well be right.

4              So I charge you with the responsibility of looking

5    over the deposition transcripts.  If Mr. Moy doesn't oppose

6    the deposition to these two officers, that might be the best

7    way to proceed without having to have a proposed amended

8    complaint.  But I am not going to force the defendant to

9    produce those officers at this point.

10             MR. MOY:  I will reach up to and check with the

11   Division in terms of it perhaps indulging plaintiff's request

12   for a written statement.

13             Our only concern beforehand, which is why we hadn't

14   done it is, you know, we're not sure exactly what the

15   plaintiffs want, right.  So the broad statement of, well,

16   whether the officers were involved in the arrest. Well, what

17   does that actually mean?

18             THE COURT:  Look, what --

19             MR. MOY:  I mean, so there's some ambiguity.

20             What I do know is what I said in the letter, and

21   that is a regurgitation of what those officers told me and

22   there is nothing else to be gleaned from them.

23             If certification from those officers or those

24   statements I represented to the Court is enough for plaintiff,

25   maybe we can work something out.

27

```
1                THE COURT:  Okay.  Well, then what I'll do is to
2       take the pressure off both sides.  I'll give more time for the
3       proposed, revised amended second amended complaint.  So, maybe
4       until the end of this month.
5                MR. UZOH:  That would be appreciated, Your Honor.
6                THE COURT:  Okay.  So I'll give you three weeks, to
7       March 1st.  Or you can file a status report.
8                MR. UZOH:  Thank you.
9                THE COURT:  Okay?  So I am granting in part and
10      denying in part, the motion for leave to amend.
11               MR. UZOH:  Thank you.
12               THE COURT:  But only to the extent stated because
13      I'm not approving your proposed amended second complaint.
14               All right.  Anything else?
15               MR. MOY:  No, Your Honor.
16               THE COURT:  Okay.
17               MR. UZOH:  There are some outstanding discovery
18      issues.  I know --
19               THE COURT:  Have you discussed this with Mr. Moy?
20               MR. UZOH:  We did.
21               MR. MOY:  Your Honor, I have -- I'm not sure what
22      he's talking about, but I do understand, for example, that we
23      had discussed in the past, and I said based on what I
24      understand we have produced what we have.  But insofar as
25      there are any other documents we will of course continue
```

1     producing them.

2              For example, I believe we produced the reviews that

3     -- we have produced performance evaluations for the officers.

4     He thinks that there might be more, I have looked into it.  I

5     have not yet found anything else.

6              But if we do, we'll, of course, produce them.  We

7     have -- you know, we have an obligation to continue insofar as

8     we discovered discoverable information.

9              THE COURT:  Is that what you're talking about, Mr.

10    Uzoh, if it's not --

11             MR. UZOH:  Well --

12             THE COURT:  If it's not, talk to Mr. Moy and then

13    you can bring that to my attention in a short letter.

14             MR. UZOH:  It is to some extent.  Essentially there

15    were closing memos, CCRB closing memos, and IAB closing memos,

16    and --

17             THE COURT:  That's not the same thing as personnel

18    records.  I think you better talk to Mr. Moy.  If you don't

19    think the production is complete, then just talk to him right

20    after this conference.

21             MR. MOY:  I just -- Your Honor, one thing might help

22    in terms of getting your perspective is your thoughts on how

23    the new rules on discovery impact the scope of disciplinary

24    files that must be included.

25             For example, in another matter Judge Orenstein said

1    that you know, yes, plaintiff is entitled to get the IAB

2    resumes and CTIs of the, of you know, related allegations

3    against the officers.

4          But they are not going to require this office to

5    produce every single investigatory file based on the new rules

6    of proportionality and requirement for relevance rather than

7    just a fishing expedition.

8          THE COURT:  Well, you know, even though there's much

9    that's been said about how different the proportionality

10   analysis is, I think that that's what courts have been doing

11   essentially all along.  And --

12         MR. MOY:  Well, I mean, for example, I mean, it

13   might affect in terms of how we respond to Mr. Uzoh's request.

14         For example, like I said, we weren't required after

15   the amended rules, at least in one case to produce for the

16   investigatory files not related to this incident, but you

17   know, sometimes, you know, plaintiff's counsels, they ask for

18   all investigatory closing files and you know video --

19         THE COURT:  Well, You know --

20         MR. MOY:  -- recordings.

21         THE COURT:  Let me --

22         MR. MOY:  Related to the --

23         MR. UZOH:  I would like to  --

24         THE COURT:  Stop.  Stop.  Talk to each other about

25   it.  I'm not going to give you an advisory opinion.  I will

1    tell you what I've done in the past with respect to

2    disciplinary records and frequently I've just required

3    production of the indexes without the underlying documentation

4    so that there can be enough information.  It's like a

5    privilege log, really, as to whether or not you're dealing

6    with conduct that is similar to the case at hand.

7            MR. MOY:  Which we have produced, Your Honor.

8            THE COURT:  Okay.  So you'll talk further about the

9    extent of the production, and it varies from case to case.  I

10   mean, someone who is charged with being habitually late, you

11   know, I mean, the documents relating to that would be

12   completely irrelevant, in my opinion.

13           MR. MOY:  Yes, Your Honor.

14           THE COURT:  So you need to explore that further

15   until it's reduced to a clear dispute.  All I can say is it

16   depends and it's always been the case.

17           MR. MOY:  Okay.  Well, then I guess defendants will

18   also bring out in terms of our outstanding discovery.  I have

19   potential discovery issues with plaintiffs too before we both

20   approach the Court.

21           THE COURT:  Yeah, I mean, talk to each other.  I

22   sense that --

23           MR. MOY:  Pursuant to the Court's rules.

24           THE COURT:  Some of the disputes may get resolved if

25   you just simply take the opportunity to talk to each other,

1    which sadly occurs less often than I, you know, than it should

2    happen.

3            MR. MOY:  I assure you, Your Honor, that Mr. Uzoh

4    and I talk very much.

5            THE COURT:  Okay.  Well, then keep talking.

6            MR. UZOH:  Thank you.

7            THE COURT:  Okay.  All right.

8            MR. MOY:  Thank you.

9            THE COURT:  Have a good day.  Bye.

10           MR. MOY:  Thank you, Your Honor.  Bye.

11       (Proceedings concluded at 4:52 p.m.)

12       I, CHRISTINE FIORE, court-approved transcriber and

13   certified electronic reporter and transcriber, certify that

14   the foregoing is a correct transcript from the official

15   electronic sound recording of the proceedings in the above-

16   entitled matter.

17

18   *Christine Fiore*

19   _____          March 1, 2016

20   Christine Fiore, CERT

21

22

23

24