UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ASHLEY PAINSON and DIEGO MERCADO,	Case No. 14 CV 2788
                Plaintiffs,	(ENV) (MDG)

   -against-	**SECOND AMENDED COMPLAINT**

THE CITY OF NEW YORK, P.O. MICHAEL	**JURY DEMAND**
ORTIZ [SHIELD # 18236], P.O. STEEVE
GAUDIN [SHIELD # 5739], P.O. WILLIAM
MANSOUR [SHIELD # 20630], SERGEANT
ANDREW CHANCE [SHIELD # 381],
SERGEANT ALAN MYRTHIL [SHIELD #
3851], P.O. JARED DELANEY [SHIELD #
1320], P.O. JUSTIN MOORE [SHIELD #
27811], P.O. TRAVIS TENNANT, P.O.
YUHUA ZHANG, and JOHN DOE AND
JANE DOE #1-8 (the names John and Jane
Doe being fictitious, as the true names are
presently unknown),
                Defendants.
-------------------------------------------------------------X

Plaintiffs, ASHLEY PAINSON and DIEGO MERCADO, by their attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, P.O. Michael Ortiz [Shield # 18236], P.O. Steeve Gaudin [Shield # 5739], P.O. William Mansour [Shield # 20630], Sergeant Andrew Chance [Shield # 381], Sergeant Alan Myrthil [Shield # 3851], P.O. Jared Delaney [Shield # 1320], P.O. Justin Moore [Shield # 27811], P.O. Travis Tennant, P.O. Yuhua Zhang, and John Doe and Jane Doe #1-8 (collectively, "defendants"), respectfully allege as follows:

<u>NATURE OF THE ACTION</u>

1.     This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C.

§1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4. Plaintiffs timely made and served their respective notice of claims upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e with regard to the original claims herein.

5. At least thirty days have elapsed since the service of aforesaid notice of claims and adjustment or payment thereof has been neglected or refused.

6. This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) are based.

## THE PARTIES

7. Plaintiffs, stepdaughter and stepfather, are and were at all times material herein citizens and residents of the United States.

8. Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

9. The City of New York Police Department ("NYPD") is an agency of defendant City, and all officers referred to herein were at all times relevant to this complaint employees and agents of defendant City.

10. Defendant P.O. Michael Ortiz [Shield # 18236] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

11. Defendant P.O. Steeve Gaudin [Shield # 5739] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

12. Defendant P.O. William Mansour [Shield # 20630] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

13. Defendant Sergeant Andrew Chance [Shield # 381] was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

14. Defendant Sergeant Alan Myrthil [Shield # 3851] was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

15. Defendant P.O. Jared Delaney [Shield # 1320] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

16. Defendant P.O. Justin Moore [Shield # 27811] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

17. Defendant P.O. Travis Tennant was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

18. Defendant P.O. Yuhua Zhang was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

19. Defendants John Doe and Jane Doe #1-8 were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

20. Defendants Ortiz, Gaudin, Mansour, Chance, Myrthil, Delaney, Moore, Tennant, Zhang and Jane Doe #1-8 are collectively referred to herein as "defendant officers".

21. At all times material to this Complaint, the defendant officers acted toward plaintiffs under color of the statutes, ordinances, customs, and usage of the State and City of New York.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22. On or about July 18, 2013, at approximately 1:30 a.m., defendant officers, acting in concert and without cause, arrested plaintiffs in front of their home which is located at 775 Marcy Avenue, Brooklyn, New York, and charged Painson with N.Y. PL 205.30 'Resisting arrest', N.Y. PL 195.05 'Obstructing governmental administration in the second degree', N.Y. PL 240.20(2) 'Disorderly conduct' (making unreasonable noise), and N.Y. PL 240.20(6) 'Disorderly conduct' (refusing to disperse). Defendant officers also charged Mercado with N.Y. PL 205.30 'Resisting arrest', N.Y. PL 240.20(2) 'Disorderly conduct' (making unreasonable noise), and N.Y. PL 240.20(6) 'Disorderly conduct' (refusing to disperse).

23. Plaintiffs, however, did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

24. Prior to the arrest, Painson stepped out to the front of her said home to get some fresh air on a hot summer day.

25. Painson's stepsister, Alexis Shields ("A. Shields"), their cousins, Tyree Cromwell and Ricky Pressley, and their family friend, Koi Sharpe (collectively, "siblings") were also outside in front of their aforesaid home and were socializing with one another.

26. After a period of time, defendants Gaudin, Mansour and Moore approached Painson and her siblings and immediately directed them to disperse.

27. Painson and her siblings then promptly advised defendants Gaudin, Mansour and Moore that they reside at the premises and had stepped outside to get some fresh air.

28. Painson and her siblings stated that they did not do anything wrong by staying outside in front of their home.

29. Shortly after defendants Gaudin, Mansour and Moore approached Painson, and her siblings, additional officers of the NYPD arrived at the scene.

30. Because defendants Gaudin, Mansour and Moore continued to insist that Painson and her siblings disperse and go inside their home, Painson and her siblings then inquired from defendants Gaudin, Mansour and Moore as to their reason for directing them to disperse.

31. As soon as Painson and her siblings inquired as to the reason for directing them to disperse, defendants Gaudin, Mansour and Moore began to forcibly grab and place handcuffs on Cromwell, Pressley and Sharpe.

32. As defendants Gaudin, Mansour and Moore were handcuffing Cromwell, Pressley and Sharpe, Painson went inside their home to inform their parents, Mercado and Charlene Shields ("C. Shields"), of the situation.

33. Mercado and C. Shields who were in bed asleep at the time were awoken by Painson.

34. Shortly after learning of the situation, Mercado stepped outside to find out what was going on.

35. As Mercado attempted to meet with defendant officers to find out the reason why his nephews were being arrested, he was directed by defendant officers to step back.

36. In compliance with defendant officers' directive, Mercado stepped back.

37. After stepping back as he was directed, Mercado inquired as to the reason why his nephews were being arrested.

38. As soon as Mercado inquired as to the reason why his nephews were being arrested, defendant officers bum-rushed Mercado and his daughters, Painson and A. Shields, who were standing next to him at the time.

39. Defendant officers forcibly pushed, pulled, grabbed and arrested Painson, A. Shields and Mercado.

40. Defendant officers forcibly grabbed Painson, pulled her arms behind her back, twisting and jerking up her arms at the same time.

41. Because of the excessive force and pressure exerted upon Painson by defendant officers, Painson was caused to sustain multiple serious bodily injuries including, but not limited to, a fracture on her left arm, ligament tear(s) and injuries on her wrist, back, head and shoulders.

42. Painson was caused to cry out in pain, and promptly complained that defendant officers broke her left arm.

43. Despite the above, defendant officers still tightly handcuffed Painson with her arms placed behind her back.

44. Defendant officers also tightly handcuffed Mercado with his arms placed behind his back.

45. Defendant officers ignored plaintiffs' entreaties to loosen, remove or extend the handcuffs with another set of handcuffs.

46. Defendant officers forcibly pushed, pulled and dragged Mercado to their police vehicle and, eventually, forcibly pushed Mercado into their police vehicle causing him to bump his knee on a bench located inside the police vehicle.

47. Eventually, defendant officers transported the plaintiffs to the NYPD-79th Precinct.

48. While at the precinct, defendant officers subjected Painson to unlawful strip search.

49. Defendant officers also pushed, pulled, kicked, dragged, hit and punched Mercado on numerous occasions while at the precinct, and did at some point hit him on his back with an object.

50. Plaintiffs were caused to sustain multiple serious bodily injuries including, but not limited to, injuries to their facial areas, heads, backs, arms, wrists, legs, knees and shoulders.

51. Mercado who is asthmatic also suffered an asthma attack while at the precinct.

52. Because of their injuries and medical conditions, plaintiffs requested to be transported to the hospital for medical care and attention.

53. Defendant officers ignored plaintiffs' entreaties for medical care and attention until several hours later when Emergency Medical Services personnel were finally summoned to attend to Painson and transport her to the hospital.

54. Defendant officers informed Mercado that his arrest processing and arraignment would be delayed if he were to receive treatment for his injuries and medical conditions and did not provide Mercado with any medical care or treatment.

55. After detaining the plaintiffs for a lengthy period of time at the NYPD-79th Precinct, plaintiffs were transported to the Central Booking to await arraignment.

56. While plaintiffs were awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

57. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiffs committed the above crime/offenses which they were charged with.

58. Based on the false testimony of the defendant officers, the prosecutors initiated criminal actions against the plaintiffs.

59. Upon arraignment, Mercado was informed that the case against him was adjourned in contemplation of dismissal.

60. On or about January 17, 2014, the false charges levied against Mercado were summarily dismissed.

61. Following her arraignment, Painson was required to return to the criminal court to defend the false charges levied against her.

62. On or about September 16, 2013, Painson appeared in criminal court and was informed that the case against her was adjourned in contemplation of dismissal.

63. On or about March 14, 2014, the false charges levied against Painson were summarily dismissed.

64. At the time of the arrest, defendant officers seized and/or appropriated to themselves several of plaintiffs' properties including, but not limited to, cell phones and related accessories, and have refused to return aforesaid items to the plaintiffs.

65. That each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the arrest and assault

described herein knew and was fully aware that plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

66. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

67. As a result of the aforesaid actions by defendant officers, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

<u>FIRST CAUSE OF ACTION: FALSE ARREST - against defendant officers except Gaudin, Chance and Tennant</u>

68. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 67 of this complaint as though fully set forth herein.

69. The conduct of defendant officers, as described herein, amounted to false arrest.

70. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

71. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

<u>SECOND CAUSE OF ACTION: EXCESSIVE USE OF FORCE - against defendant officers except Gaudin, Chance, Myrthil and Tennant</u>

72. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 71 of this complaint as though fully set forth herein.

73. The conduct of defendant officers, as described herein, amounted to excessive use of force.

74. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

75. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

THIRD CAUSE OF ACTION: FIRST AMENDMENT RETALIATION - against defendant officers

76. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 75 of this complaint as though fully set forth herein.

77. Defendant officers unlawfully retaliated against the plaintiffs for exercising their First Amendment rights as described above.

78. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

79. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FOURTH CAUSE OF ACTION: UNREASONABLE SEARCH & SEIZURE - against defendant officers except Gaudin, Chance and Tennant

80. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 79 of this complaint as though fully set forth herein.

81. Defendant officers subjected Painson to unlawful strip search, and subjected the plaintiffs to unreasonable search & seizure.

82. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

83. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FIFTH CAUSE OF ACTION: FAILURE TO INTERVENE - against defendant officers

84. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 83 of this complaint as though fully set forth herein.

85. That each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the arrest, assault and/or incident described herein knew and was fully aware that plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

86. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

87. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

88. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTH CAUSE OF ACTION: DELIBERATE INDIFFERENCE - against defendant officers except Gaudin, Chance and Tennant

89. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 88 of this complaint as though fully set forth herein.

90. Defendants denied plaintiffs treatment needed to remedy their serious medical conditions and did so because of their deliberate indifference to the plaintiffs' need for medical treatment and care.

91. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

92. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: UNREASONABLE DETENTION - against defendant officers except Gaudin and Tennant

93. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 92 of this complaint as though fully set forth herein.

94. The conduct of defendant officers, as described herein, amounted to unreasonable detention.

95. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

96. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: FABRICATION OF EVIDENCE AND DENIAL OF RIGHT TO A FAIR TRIAL - against defendant officers except Gaudin, Chance and Tennant

97. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 96 of this complaint as though fully set forth herein.

98. Defendant officers manufactured evidence of criminality against the plaintiffs which the prosecutors relied upon to initiate criminal actions against the plaintiffs.

99. The conduct of defendant officers, as described herein, amounted to fabrication of evidence and denial of right to a fair trial.

100. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

101. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

NINTH CAUSE OF ACTION: DENIAL OF RIGHTS TO FAMILIAL ASSOCIATION - against defendant officers

102. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 101 of this complaint as though fully set forth herein.

103. Plaintiffs were arrested simply for socializing in front of their home with their relatives.

104. Defendant officers denied the plaintiffs their rights to familial association.

105. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

106. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

TENTH CAUSE OF ACTION: DISCRIMINATION, DENIAL OF EQUAL PROTECTION OF THE LAWS AND DENIAL OF DUE PROCESS RIGHTS - against defendant officers except Gaudin, Chance and Tennant

107. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 106 of this complaint as though fully set forth herein.

108. The conduct of defendant officers, as described herein, amounted to discrimination, denial of equal protection of the laws and denial of due process rights.

109. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

110. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

ELEVENTH CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City

111. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 110 of this complaint as though fully set forth herein.

112. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone

        perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

113.    Additionally, defendant City, acting through Kenneth P. Thompson and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

114.    Defendant City, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are blacks, on the pretext that they were involved in some crime or offense.

115.    Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

116.    For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

117.    In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in unlawful stop and frisk. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

118. Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

119. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

120. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

121. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

122. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

123. Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain

14

|     | |
| --- | --- |
|      | individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs. |
| 124. | Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records. |
| 125. | Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes. . . ." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed." |
| 126. | Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure." |
| 127. | In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been |

           convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

128. Upon information and belief, many of the named individual defendants have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants are named defendants in numerous lawsuits in this district and in the Southern District of New York alleging similar claims as those alleged herein -- many of which lawsuits have been settled by defendant City with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits.

129. In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-79th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

130. Most of the arrests and charges made by officers assigned to the NYPD-79th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

131. Defendant City has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-79th Precinct concerning similar arrests and charges as those described herein. *See, e.g., Ronald Middleton v. City of New York* (14 CV 7389); *Ronald Dykes v. City of New York* (14 CV 6088); *Karen Fennell v. City of New York* (14 CV 2790); *Shamarlon Villafana v. City of New York* (13 CV 3591); *Anderson Charles v. City of New York* (13 CV 2546); *Latisha Thomas v. City of New York* (12 CV 5061); *Cymantha Holly v. City of New York* (12 CV 4323); *Nicholls Olwyn v. City of New York* (08 CV 2098).

132. Defendant City maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to

16

take any corrective actions, defendant City acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

133. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

134. By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

TWELFTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 9, 11 & 12 - against defendants

135. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 134 of this complaint as though fully set forth herein. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving the plaintiffs of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 9 (providing for right to assemble), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

136. In addition, defendant officers conspired among themselves and conspired with other individuals to deprive the plaintiffs of their constitutional rights

  secured by Article I, §§ 5, 6, 8, 9, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

137. Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 9, 11 & 12 of the New York Constitution.

138. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

THIRTEENTH CAUSE OF ACTION: OTHER NEW YORK TORTS - against defendants

139. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 138 of this complaint as though fully set forth herein.

140. The conduct of defendant officers, as described herein, amounted to false arrest/imprisonment, assault and battery, unreasonable detention, unreasonable search and seizure, breach of special duty or relationship, negligence and negligent and intentional emotional distress.

141. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FOURTEENTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES - against defendant City

142. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 141 of this complaint as though fully set forth herein.

143. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiffs to prevent the physical and mental abuse sustained by plaintiffs.

144. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiffs or to those in a like situation would probably result from such conduct described herein.

145. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

146. Upon information and belief, defendant City's negligence in hiring and retaining defendant officers proximately caused plaintiffs' injuries.

WHEREFORE, plaintiffs respectfully pray judgment as follows:

    a.    For compensatory damages against all defendants in an amount to be proven at trial;

    b.    For exemplary and punitive damages against all defendants in an amount to be proven at trial;

    c.    For costs of suit herein, including plaintiffs' reasonable attorney's fees; and;

    d.    For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
       March 1, 2016

UGO UZOH, P.C.

/s/

By:    Ugochukwu Uzoh (UU-9076)
        Attorney for the Plaintiffs
        304 Livingston Street, Suite 2R
        Brooklyn, NY 11217
        Tel. No: (718) 874-6045
        Fax No: (718) 576-2685
        Email: u.ugochukwu@yahoo.com